Good morning, Your Honors. May it please the Court, my name is Shamim Hassan. I represent the petitioner in this case, Mr. Sheikh Ali Ahmed. Mr. Ali Ahmed has credibly testified to several incidents where he and members of his family were persecuted by the Bangladesh government because of being Bihari and because of being politically active on behalf of the by the military and by the police. He saw his uncle killed, his older brother kidnapped and severely beaten, another brother was killed by opposition political party, and his sister was raped by the police. Yes, yet the immigration judges who heard his case concluded that all of this still did not amount to persecution on account of the two protected grounds, which were membership in the social group of Biharis and political opinion. We believe that these In fact, one of the immigration judges even went so far as to say that Mr. Ahmed did not possess any political opinion whatsoever. He came to that conclusion by relying solely on a single statement made by Mr. Ahmed and by completely disregarding everything else from the testimony regarding that issue. Mr. Ahmed made the statement... Name of the immigration? Banks, IRA Banks. Banks? IRA Banks, sir. Oh, banks. Yes. Okay. Mr. Ahmed made one statement, quote, I have no political opinion for Bangladesh. I only want to return to Pakistan, unquote. The immigration judge interpreted this statement literally and relied only on this statement. How this statement should have been interpreted was was that it was the expression of his opinion that the Biharis, due to the constant oppression by the government, have no stake in the future of independent Bangladesh. And it was expression of his frustration arising from that realization. That by itself is a political opinion. Counsel? Yes. My only concern is the standard of review that we have. We must be convinced that the evidence compels a finding contrary to that made by the immigration judge. Is that your position that a contrary finding is compelled by the evidence in this case? Because everything in the record clearly indicates that he had political opinion and several political opinions. Yes, the immigration judge bluntly stated that he has no political opinion whatsoever, which is inconsistent with everything that he testified to and everything else is on the record. For example, he was one of the leaders and organizers of several demonstrations and protests and hunger strikes. How is it possible for someone to lead and organize such events without possessing a political opinion? But wasn't there evidence in the record that the reason that there were beatings was because they were told to conduct the hunger strike, to conduct the protest within the camps and they did it outside the camps, contrary to that direction? Regarding that incident, they were not doing anything illegal. They were peaceful and they were just conducting the hunger strike and they were forcibly removed by the police. But if the police told them where they could legally conduct the protest and they decided to defy the police orders, that wouldn't be political, would it? They wouldn't do anything legally in conducting the hunger strike where they were. This was an example of the police overstepping their boundaries and taking advantage of a group simply because they're more vulnerable and helpless. Think about in America. If you're going to do a protest and you want to do it at 1600 Pennsylvania Avenue and the police tell you you can do it on the sidewalk but can't get in the street and you're arrested for blocking the street, is that political oppression at that point? But the police had no such reason for telling them to change the location of their event at that time. They were doing nothing which was disrupting the public. They were doing nothing which was illegal. This was an example of police taking advantage of the fact that the Biharis inherently are more helpless and vulnerable. If it was any other group, the police wouldn't have acted the same. And in addition to the immigration judge erroneously concluding that he had no political opinion, the immigration judge as well as government counsel, responding counsel, indicated on several of these instances that it was the police who were justifiably reacting to the situation. However, specifically there was one incident in 1994, a demonstration held outside a camp that led to Mr. Ahmed being beaten and arrested. Immigration judge dismissed the significance of this or downplayed it by characterizing as a reflection of, quote, I'm sorry, quote, more of a reflection on police tactics in countries such as Bangladesh than it is an indication that they had a political opinion that they wished to overcome. Respondents in their, responding counsel in their brief describe it as the police justifiably attempting to control a violent, quote-unquote, profanity-laced event, consisting of threats to, quote-unquote, overthrow the government. All these characterizations are inaccurate. What Mr. Ahmed said was, quote, we were swearing and we were taking an oath what we are going to do. There was swearing. Wasn't there evidence that said Mr. Ahmed stated if you don't give us the freedom to speak today, then this very Bangladesh is going to become Pakistan. Yes, exactly. I'm glad you brought that up, because that was actually, that was my next point. This was a completely rhetorical statement and needs to be taken in the context of which it was said. The fact interpreting this as a literal threat to overthrow the government is an extreme stretch. Are we compelled to view it in that nature? I'm sorry? Are we compelled to say it was rhetorical? I think if it's viewed in the context, it becomes very obvious that it was rhetorical, given everything else that's going on. The fact that this is, given the situation and the reality of the Bihari condition, this, such action is clearly impossible. And this was, what he meant was, it was rhetorical repudiation of the fact that the Bangladesh government constantly denies Biharis the expression of, the right of freedom of speech. And this is a repudiation of the policy and an assessment of the long-term consequences to the future of Bangladesh or to any country which exploits minority groups in this manner. That is the context that needs to be taken in. And it's obvious, I mean, they have no weapons, they have no money, they're just trying to take this threat literally is almost absurd, I believe, in the context. And what he was doing was mainly trying to get an exposure to the plight of the Biharis, which no one seems to care about. And this is why he was persecuted. Several other incidents support this pattern. In 1990, he was arrested and beaten for his involvement in the hunger strike. Actually, we discussed that. And in 1993, one of his brothers was kidnapped by opposition political party, the Wamili, because of his refusal to support them in a political rally. The council didn't testify that only his brother was taken and not the others, because they got angry with his brother. They had an argument with his brother, but not with the others. And so the entire group that was there was not taken, just his brother, because they had an argument with his brother and not the others. So it was more of a personal thing as opposed to a political thing. They got angry with his brother specifically because his brother refused to provide political support. His brother was of the political opinion that this group is not deserving of his political support, which I believe amounts to persecution on behalf of his political opinion. And the respondents argue that this doesn't amount to persecution because there wasn't government sanction. However, the law clearly allows for finding a persecution when the acts are carried out by individuals or organizations the government is unwilling or unable to control. Now, the severity of the ongoing conflict and tension between the government and the opposition parties and the various ruling parties are clearly reflected in the country conditions by the Department of State reports. And all of this leads to, points to a situation where a helpless, oppressed minority becomes even more vulnerable. Another incident, this condition, the helplessness of the Bihari condition is exemplified by another incident, the rape of Mr. Ahmed's sister by the police. The immigration judge dismissed the significance of this incident by labeling it as a, quote, common crime and, quote, not a personal thing. Respondents argue that this was, quote, crime of opportunity committed by rogue police officers and not an act of persecution by the government. And the second point is that this was not connected to her being a Bihari. I believe this was, this assessment is incorrect on both points. First, abusiveness and corruption on part of the police is a major and pervasive problem in Bangladesh, one that the government is either unwilling or unable to control. Second, this was connected to her being a Bihari. Due to the inherently helpless condition of the Biharis, they lack access to justice and legal due process. Therefore, they're easier targets for such crimes. Counsel, how does that support his asylum claim? Did the police know that she was related to him? How does that mesh with his claim? There is case law providing that evidence of persecution of family members can support one's asylum claim. If the persecutor knows of the family relationship, there's no evidence here that the rapist knew that the victim was Ahmed's sister. So how do you put that together in terms of supporting his asylum claim? Well, this adds to the, it adds to his, it adds to his fear of persecution. The fact that the police are prone to exploit and abuse someone simply because he is a Bihari. Adds to that overall level of fear of persecution because, you know, just one in a, one in a string of incidents, which shows the police exploitation of the Biharis. You want to save some time, do you? Yes, I'll save some time for rebuttal. Thank you, Your Honor. May it please the Court, Mary Jane Kondo representing the respondent in this matter. Excuse me, the United States Attorney General. As Your Honor has pointed out, the question before the Court is whether the evidence compels a conclusion contrary to the one reached by the immigration judge and the board in this matter. Although Petitioner's Counsel has offered various possibly reasonable explanations for different conclusions in this case, he has pointed to nothing that compels the contrary conclusion. The State Department report states there is no evidence that Biharis are specific targets of police abuse or other mistreatment in Bangladesh. And concerning, I think what Your Honor was getting to a minute ago about regulations and how protests are held, the immigration judge did ask the Petitioner about that. Are there regulations? What are you allowed to do? Are you allowed to protest at all? And in fact, the Petitioner, in a sense, complained that they are required to protest in a peaceful manner. That's on page 290 of the record. And it sounded to me like Petitioner was conceding, in fact, that there was violence at every one of these protests. The hunger strike, he admitted that it was held where it wasn't allowed. The police said, we want you to do that in your camp, and they refused to do that. That was in 1990. In 1991, he admitted he was involved in a riot. It started out as a protest outside the Pakistani embassy, but he said eventually stones were thrown at the Pakistani embassy and the crowd pushed and jostled the embassy guards. At that point, he was arrested. He's involved in illegal activities. Then the next, the third riot or occurrence was in 1994. Now, whether there was profanity or not, and I actually think that's a factual determination, and I don't think the record compels the conclusion that there was not profanity being used. He said, we were swearing. I guess it's possible that they were swearing oaths as opposed to using bad language. But in any event, what the Petitioner testified was, they were talking over the microphone saying whatever. The police then came in and removed the microphones, and then the people in the demonstration started stoning the police. He admitted that it was a riot, so again, he was arrested. From the record, it clearly shows that each of the three times the Petitioner was arrested, he was involved in some kind of riot or wasn't obeying police orders. Now, the fact that he may have been, or whatever treatment he received when he was in custody, and we did say in our brief, is not evidence of persecution or that he was singled out. Unfortunately, Bangladesh, as the country report states, is one of the poorest countries in the world, and frankly, Bangladeshi police generally don't treat any of their detainees well. But I guess in at least, well, the Petitioner here at least was only detained in each case for about 24 hours. So it's not a sort of situation where he was detained for weeks and that sort of thing. He was released after 24 hours in each case. Now, there's no evidence that the rape of his sister was not a crime of opportunity. His testimony was she went outside the camp to get water. They can go during certain hours. She went towards the end of the time, and eventually the water runs out. There were only a few people there, and some police officers dragged her away. And I can't remember. It might have been a second woman also. There's no evidence. I mean, counsel conceded today already that law enforcement is corrupt in Bangladesh. I mean, there's nothing, and as Your Honor pointed out, there's nothing to show that the police knew who she was at all, or that they knew that she was related to this Petitioner. It's true that in Bangladesh, the Biharis are required to live in camps. But the fact is this Petitioner has testified. He's a high school graduate. He started a small school in the camps for some of the young children. When he moved to a different camp, he became, he said, sort of a secretary in an office within the camp. And the State Department, oh, and also he's fluent in Bengali, which is not true, according to the State Department, of all the Biharis. And finally, what I want to point out is he had made a claim that he's stateless, but the fact is Bangladesh granted him a passport, and then since he's been in the United States, Bangladesh Embassy renewed that passport. I don't think there's any better evidence of citizenship in a country than having that country issue a passport. So I don't think there's any question that the immigration judge and board properly denied his application for relief and ordered him removed to Bangladesh, unless there are questions. I think that will conclude. Thank you. Thank you very much. Thank you. Thank you, Your Honors. Regarding the issue of his passport, the fact of the matter is that it's actually pretty easy for anyone to obtain a passport. There are various different means available. There's including bribery of government officials, which is common, including the existence of a black market. In that context, the passport is merely a travel document. By no means is it any kind of implicit recognition or validation of the rights associated with becoming a citizen. And the fact of the matter is the Bangladeshi government was more motivated to issue passports to Biharis so it would help them get rid of them. And his passport was renewed only after he entered the U.S. here, if not through the Bangladesh government over there. But I believe the main error committed by the immigration judge was asserting that he had no political opinion whatsoever. Once he reached that judgment, he shut himself out to considering all the possibilities of what Mr. Ahmed was involved in, the nature of his activities, which clearly were political. So if nothing else, that alone, I believe, compels a reversal of the decision because everything clearly indicates that he was politically involved on behalf of the Biharis. All right. Time's up. Thank you. We're going to take a brief recess at this time. And we'll be back somewhere between five and ten minutes. Of course, we have to recess.
judges: Pregerson, Rawlinson, Sandoval